### 14936.  LEVY v. AMERICAN WHOLESALE CORPORATION.

JENKINS, P. J.  1.  While it is true that the confirmation of a composition, proposed by a bankrupt to his creditors, followed by a dismissal of the case, has the effect of discharging him from all ordinary claims provable in bankruptcy (*Glover Grocery Co.* v. *Dorne,* 116 *Ga.* 216, 42 S. E. 347), neither such a proceeding by composition nor an actual discharge in bankruptcy has the effect of divesting a creditor's title to property owned by him in the hands of the bankrupt. *Smith* v. *Turner,* 141 *Ga.* 313 (80 S. E. 993); *Long* v. *McIntosh,* 129 *Ga.* 660, 662 (59 S. E. 779, 16 L. R. A. (N. S.) 1043, 12 Ann. Cas. 263); *Moon* v. *Wright,* 12 *Ga. App.* 659 (78 S. E. 141); *Birmingham Fertilizer Co.* v. *Cox,* 10 *Ga. App.* 699 (73 S. E. 1090). Accordingly, the special plea, referred to in the statement of facts did not set up a valid ground of defense.

2.  "In a trover suit for the recovery of property the title to which the plaintiff holds as security for a debt, the measure of damages, where plaintiff elects to take a money verdict, is either the highest proved value of the property between the date of conversion and the trial, or the value of the property at the date of conversion, with interest or hire thereon, subject, however, to the condition that under neither choice can a recovery be had for more than the amount of the debt for which the property stands as security." *Benton* v. *Harley,* 21 *Ga. App.* 168 (2) (94 S. E. 46). In case of a conversion of such collateral, the owner is prima facie entitled to recover its face value as the measure of his actual damages (*Citizens Bank of Madison* v. *Shaw,* 132 *Ga.* 771 (3), 65 S. E. 81), but the actual value of the converted property constitutes the true measure, where a different value other than the nominal value is shown. *Fisher* v. *George S. Jones Co.,* 108 *Ga.* 490 (34 S. E. 172). In this case, the court might have seen proper to accept the opinion of the defendant as to value, but it was in no wise bound to do so.

3.  The parties are not at issue as to the fact that the defendant collected $185 from the collateral paper, and included this in certain payments made to plaintiff. If by the time the remittitur from this court is made the judgment of the court below the plaintiff will write off from its judgment the said sum of $185, the judgment of the court below will stand affirmed; otherwise the judgment is reversed. The costs of the writ of error are taxed against the defendant in error.

*Judgment affirmed on condition.  Stephens and Bell, JJ., concur.*

DECIDED APRIL 19, 1924.

Trover; from Tift superior court—Judge Eve.  July 14, 1923.

The American Wholesale Corporation brought trover for certain collateral notes of the value of $1,099.92, which the defendant had delivered to it to secure a much larger indebtedness, and which it turned over to him under a trust receipt, for collection.  The amount remaining due the plaintiff at the time the suit was instituted amounted to more than the face value of the collateral sued for.  The defendant pleaded, that, after he received back the notes for collection, he made payments to the plaintiff aggregating $1,050, with the expressed understanding that the payments be applied on the claim for which the plaintiff held the collateral notes sued for, and that he thus "paid to the plaintiff an amount far in excess of the value of the notes."  The defendant alleged also that the value of the notes sued for did not exceed $400.  He set up also, as a separate and independent defense, that after the collateral notes had been received by him in trust for collection, and after the payments referred to had been made, he was adjudicated a bankrupt, and offered a composition, which was accepted in conformity with law, and that by reason of these facts the plaintiff was not entitled to recover.

The judge of the superior court (who, by consent, tried the case without a jury) found in favor of the plaintiff in the amount sued for, which represented the face value of the notes.  The defendant gave his own testimony as to the value of each of the notes, and, according to the opinion of this witness, their total value when received back for collection did not exceed $365.  He testified that the payments to the plaintiff, aggregating $1,050, were made in three installments of $500, $300, and $250 respectively.  He did not show, however, that these sums were derived from collections made on the collateral notes sued for.  His testimony on that point was as follows: "I don't remember and can't swear which of the makers of the collateral notes had paid me $500 by October 4, 1921, and $300 by October 21, 1921.  I don't remember what they paid, but I think I had collected some by October, but I can't swear that any particular one had paid. I can swear positively that before December 27, 1921, I had collected the Jody Hugheley note of $75 and the Elzie mule delivered to me for $100.  I have not paid anything on the American Wholesale Corporation indebtedness since December 27, 1921."

He did swear, however, that he had made collections on the collateral notes, as follows: S. H. Lipps, $10; Jody Hugheley, $75; and Elzie, $100; and that "I paid them every cent I collected on the notes and more." On redirect examination he testified: "I collected the Sam Elzie and Joe Hugheley notes, and turned the money over to Mr. Hargrett," attorney for the plaintiff; also, "I have heretofore refused to deliver them [the notes]', and now decline to do so."

*C. A. Christian, R. D. Smith,* for plaintiff in error.
*Fulwood & Hargrett,* contra.